IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STACY NORRIS, | : | Case No. 2:17-cv-00791 |
| Plaintiff, | : | JUDGE ALGENON L. MARBLEY |
| v. | : | Magistrate Judge Jolson |
| GLASSDOOR, Inc., | : | |
| Defendant. | : | |

## OPINION & ORDER

Plaintiff Stacy Norris, a veteran of the United States Navy, brought this proceeding against her former employer, Glassdoor, Inc., alleging that Glassdoor took adverse employment action against her in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) and asserting claims for breach of contract and fraud under Ohio law. The matter is before the Court on two motions filed by Glassdoor: a Motion to Dismiss Mrs. Norris's Amended Complaint, (ECF No. 25), and a motion to strike or disregard the affidavit and the Department of Defense Form 214 that Mrs. Norris attached to her Response to Glassdoor's Motion to Dismiss, (ECF No. 28). For the reasons set forth below, the Court **GRANTS** Glassdoor's Motion to Disregard the Affidavit and **GRANTS** Glassdoor's Motion to Dismiss.

### I. BACKGROUND

#### A. Factual Background

Mrs. Norris is a veteran of the U.S. Navy. She was on active duty from September 23, 1997 to September 23, 2001. (ECF No. 24 ¶ 6). After an honorable discharge, she continued to serve on inactive duty until September 23, 2005. (*Id.*). She has not returned to military service

since then. Her husband served in the Navy during and after the events giving rise to this suit. (*Id.* ¶ 9).

In 2007, Mrs. Norris began working for the Defendant in this case, Glassdoor, Inc. (*Id.* ¶ 8). Mrs. Norris and her husband had been friends with Glassdoor's co-founder and CEO, Robert Hohman, and Glassdoor's Manager of Content, Melissa Fernandez, since 1988; both Mr. Hohman and Ms. Fernandez were aware that Mrs. Norris had served in the Navy. (*Id.* ¶ 6-7).

Glassdoor's corporate mission is to facilitate professional connections and information sharing between employers and job seekers. (*Id.* ¶ 8). To this end, Glassdoor allows its users to post company reviews on its website. (*Id.*). Mrs. Norris's job was to monitor these postings and to flag, approve, or disapprove the reviews as necessary. (*Id.*). Using a laptop, Mrs. Norris worked remotely from her home in Zanesville, Ohio. (*Id.*). In 2011, however, the Navy deployed her husband to Virginia Beach, Virginia, for two years. Mrs. Norris planned to move to Virginia with him for the duration of the deployment. (*Id.* ¶¶ 9-10). She told Glassdoor about her plan to relocate and to continue working remotely for the company while in Virginia. (*Id.* ¶ 10). Glassdoor responded that she would lose her job unless she maintained her Ohio residency and she must resign if she moved to Virginia. (*Id.* ¶ 11). In exchange for her resignation, Glassdoor agreed to hire her for "a position that she was qualified for" when she returned to Ohio. (*Id.*). Mrs. Norris accepted this offer. (*Id.*). The agreement was initially only verbal, but Glassdoor later memorialized its promise via email. (*Id.* ¶ 18). Mrs. Norris characterizes these events as Glassdoor "forc[ing] [her] to resign." (*Id.* ¶ 11).

In addition to a fixed salary and other benefits, Glassdoor periodically compensated Mrs. Norris with shares of stock in the company if she received positive performance evaluations. (*Id.* ¶ 8). Because of her resignation, Mrs. Norris lost the right to future performance-based stock

distributions. (*Id.* ¶ 12). She believed that one such distribution was pending at the time of her resignation, and she did not intend to give up her right to receive it. (*Id.*). At the time of her resignation, Glassdoor did not inform Mrs. Norris that she would forfeit the right to future stock distributions. (*Id.*).

In 2013, after her husband's deployment, Mrs. Norris returned to Ohio. (*Id.* ¶ 19). She contacted Glassdoor and expressed her interest in working there once again. (*Id.*). She does not specify how she contacted Glassdoor or whom she attempted to contact. However, she received no response from the company and was unable to gain employment there as a result. (*Id.*).

### B. Procedural Background

Mrs. Norris filed her Amended Complaint on February 16, 2018. (ECF No. 24). She advances four claims. Two of her claims sound in the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, *et. seq.*, a statute designed to prevent discrimination based on an individual's military service. (*Id.* ¶¶ 5-16, 26-34). Claim I in the Amended Complaint alleges discrimination under USERRA based on her association with her husband, who was deployed with the U.S. Navy at the time Mrs. Norris left her job at Glassdoor. (*Id.* ¶¶ 5-16). Claim III alleges discrimination under USERRA based on Mrs. Norris's own past military service. (*Id.* ¶¶ 26-34).

She also asserts two claims sounding in Ohio law. In Claim II, Mrs. Norris seeks relief for breach of contract due to Glassdoor's failure to rehire her. (*Id.* ¶¶ 17-25). Finally, in Claim IV, Mrs. Norris alleges fraud based on Glassdoor's failure to disclose that she would lose the right to future stock distributions upon her resignation and based on what Mrs. Norris believes to be Glassdoor's intentional misrepresentation regarding its intent to rehire her at the time of her resignation. (*Id.* ¶¶ 37-38).

3

Glassdoor filed a Motion to Dismiss all of Mrs. Norris's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 27, 2018. (ECF No. 25). In the alternative, Glassdoor asks this Court to decline to exercise supplemental jurisdiction over her state law claims (Claims II and IV) if Mrs. Norris's USERRA claims are dismissed. (*Id.* at 13). Mrs. Norris filed her Response in opposition to dismissal on March 19, 2018. (ECF No. 27). With her Response, Mrs. Norris attached a personal affidavit, recounting many of the same facts alleged in the Amended Complaint. (*Id.*). Attached to the affidavit is her Department of Defense Form 214, which indicates her honorable discharge from the Navy in 2001. (*Id.*). The affidavit largely restates the allegations in the Amended Complaint, but it contains additional detail about Glassdoor's communications with Mrs. Norris regarding their agreement at the time of her resignation. (*Id.*). It also contains specific information about Mrs. Norris's attempts to contact Glassdoor personnel and regain employment at Glassdoor after returning to Ohio. (*Id.*). On April 2, 2018, in its Reply brief supporting dismissal, Glassdoor also moved for this Court to strike or disregard Mrs. Norris's affidavit. (ECF No. 28). Mrs. Norris filed a Response in opposition to the Motion to Strike or Disregard on April 23, 2018. (ECF No. 29). Both of Glassdoor's pending motions are fully briefed and ripe for review.

## II. LAW AND ANALYSIS

### A. Defendant's Motion to Strike or Disregard

When ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts generally may not consider matters outside the pleadings. *In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016). A court may consider outside evidentiary materials, however, if it converts the 12(b)(6) motion to a motion for summary judgment. FED. R. CIV. P. 12(d); *Rogers v. Stratton Industries Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Similarly, when ruling on a Rule 12(b)(1)

motion to dismiss for lack of subject matter jurisdiction, courts are free to consider evidence outside the pleadings. *Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990).

Relying on the Sixth Circuit case *Rogers v. Stratton Industries Inc.*, Mrs. Norris argues that Glassdoor's 12(b)(6) motion is a 12(b)(1) jurisdictional challenge masquerading as a merits-based challenge and that the Court should therefore consider her affidavit. (ECF No. 29 at 2). But there simply is no such masquerade: Glassdoor's 12(b)(6) motion merely asks the Court to decide whether USERRA provides Mrs. Norris with a claim for which relief can be granted. Nor does *Rogers* require the Court to construe Glassdoor's 12(b)(6) motion as a 12(b)(1) motion. The *Rogers* court noted that "[w]here the issue is whether the claim is *covered* by the statue . . . it makes little difference whether Rule 12(b)(1) or Rule 12(b)(6) is the vehicle used to raise the issue as long as the non-moving party is not taken by surprise and has an adequate opportunity to respond." 798 F.2d at 917 (emphasis in original). Not only has Mrs. Norris had the opportunity to respond to Glassdoor's motion, but also she is perhaps the party who benefits the most by this Court's decision not to construe Glassdoor's Motion to Dismiss as a 12(b)(1) motion. A 12(b)(1) motion would have subjected her to the burden of proving that the Court has subject matter jurisdiction. *See Ohio Nat'l Life Ins.*, 922 F.2d at 324; *Rogers*, 798 F.2d at 915. Rule 12(b)(6) is more deferential to Mrs. Norris's factual allegations and does not allow Glassdoor to submit evidence that could undermine those allegations.

Mrs. Norris also contends that her affidavit is necessary to counter Glassdoor's statements in a previous motion to dismiss that questioned whether Mrs. Norris served in the military at all.[1] (ECF No. 29 at 2-3). No such substantiation is required at this juncture. When deciding whether a claimant has stated a claim sufficient to survive dismissal under Rule 12(b)(6), courts must treat

---

[1] After Mrs. Norris amended her original Complaint, the Court denied Glassdoor's prior Motion to Dismiss as moot. (ECF No. 26).

5

all nonconclusory allegations in the complaint as true. *Total Benefits Planning Agency, Inc.*, v. *Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Thus, for the purpose of evaluating Glassdoor's Motion to Dismiss, the Court accepts as fact that Mrs. Norris served in the military.

Because there is no basis upon which to convert Glassdoor's 12(b)(6) Motion to a motion for summary judgment, this Court must disregard the affidavit. Glassdoor's Motion to Strike or Disregard is therefore **GRANTED**, and the Court will disregard this evidence in analyzing Glassdoor's Motion to Dismiss. *See e.g.*, *Dillon*, 2011 WL 2632802 at *2 (disregarding, but declining to strike, evidence outside the pleadings when deciding the merits of a 12(b)(6) motion).

### B. Defendant's Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that complaints contain a "short plain statement of the claim showing that the pleader is entitled to relief." However, the complaint also must "give the defendant fair notice of what… the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint that fails to state a claim on which relief may be granted is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, a plaintiff must allege facts that, accepted as true, are sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion for dismissal under Rule 12(b)(6) "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). When ruling on a 12(b)(6) motion, courts must presume all factual allegations in the complaint are true and must draw all reasonable factual inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434. A

6

complaint that merely contains "labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice to state a claim for which relief may be granted. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted)).

### 1. Claim I – USERRA Discrimination Based on Husband's Military Service

To succeed on a discrimination claim under 38 U.S.C. § 4311, the plaintiff bears the burden "of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action(s)." *Petty v. Metro. Gov't of Nashville-Davidson Cty.*, 538 F.3d 431, 446 (6th Cir. 2008). A plaintiff can meet this requirement by direct or circumstantial evidence. *Hance v. Norfolk S. Railway Co.*, 571 F.3d 511, 518 (6th Cir. 2009)). If the plaintiff satisfies this burden, the defendant employer must "prove the affirmative defense that the employment action(s) would have been taken in the absence of the employee's protected status." *Petty*, 538 F.3d at 446.

Mrs. Norris alleges that her husband's military activity was a substantial or motivating factor in Glassdoor's adverse employment action. No courts within the Sixth Circuit have yet decided whether USERRA allows for claims based on spousal activity.

In resolving this issue, the Court begins with the text of the statute. USERRA states in relevant part:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer *on the basis of that membership, application for membership, performance of service, application for service, or obligation*.

38 U.S.C. § 4311(a) (emphasis added). Congress was clear that USERRA protects past, current, and prospective members of the uniformed services from adverse employment actions on the basis of their own service. So, too, have implementing regulations made clear that adverse employment

7

action against a military spouse is not a basis for liability under USERRA. *See* Notice of Rights and Duties Under the Uniformed Services Employment and Reemployment Rights Act, 70 Fed. Reg. 75313 (Dec. 19, 2005) (to be codified at 20 C.F.R. pt. 1002) ("To the extent that the comment seeks an affirmative statement that spouses and dependents are protected from discrimination by their own employers because they are related to an individual covered by USERRA, such a request exceeds the coverage of the statute.").

Mrs. Norris, however, argues that section (b) of the statute indicates that USERRA's protections are broad enough to cover her due to the statute's inclusion of the phrase "any person." (ECF No. 27 at 5). Section (b) reads:

> An employer may not discriminate in employment against or take any adverse employment action against *any person because such person* (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in *this subsection* shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

38 U.S.C. § 4311(b) (emphasis added). This portion of USERRA provides no remedy for Mrs. Norris. The phrase "any person" does not stand alone, and the language of this section is not as flexible as she suggests. Section (b) contains a list of prerequisites that qualify a plaintiff for relief. The prerequisites show that subsection (b) is meant to protect employees against adverse employment actions due to their pursuit of other legal protections available to them under USERRA or their assistance to another individual who is bringing a USERRA claim. Mrs. Norris satisfies none of these prerequisites. If Congress had wished to provide the same protection for the spouses of uniformed service members, such a clause logically would have fit into section (b), but no such clause is present.

Finally, Mrs. Norris argues that USERRA should be interpreted broadly enough to provide her with legal protection because it is a remedial statute. (ECF No. 27 at 4). Benefits extended in remedial statutes are to be interpreted broadly, and exceptions to the availability of benefits are to be interpreted narrowly. *See Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 559 (6th Cir. 2009). It is true that USERRA is remedial in nature. *See Hernandez v. Dep't of Air Force*, 498 F.3d 1328, 1332 (Fed. Cir. 2007) (noting "Congress's broad remedial intent in enacting USERRA"). But here, the Court need not rely on interpretive canons to ascertain the statute's reach. Congress explicitly outlined the scope of USERRA's remedial purpose in 38 U.S.C.A. § 4301(a):

> (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
>
> (2) to minimize the disruption to the lives of *persons performing service* in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
>
> (3) to prohibit discrimination against persons because of *their* service in the uniformed services.

38 U.S.C.A. § 4301(a) (emphasis added). The statute's protections are no broader than § 4301(a) indicates: the remedial purpose does not extend to military spouses.

Other federal courts have reached the same conclusion. In *Lourens v. Merit Systems Protection Board*, the Federal Circuit held that the plaintiff did not have the same USERRA protections as her deceased husband. 193 F.3d 1369, 1371 (Fed. Cir. 1999) ("If Congress desired… to include spouses or widows of such persons, an additional phrase in the statute would have done the job. That phrase is not there."). *See also Harden-Williams v. Agency for Int'l Dev.*, 469 F. App'x. 897, 899 n. 2 (Fed. Cir. 2012) ("[A] widow of a military serviceman who has not herself served in a uniform service is not entitled to the protections of USERRA."). The United

9

States District Court for the Eastern District of Louisiana also held that USERRA did not provide a legal remedy for the widow of a deceased service member. *Singletary v. Prudential Ins. Co. of America*, 105 F.Supp.3d 627, 635 (E.D. La. 2015) ("Nowhere in the plain text of the statute does the USERRA prohibit discrimination against a spouse of a service member by the spouse's employer.").

Glassdoor's Motion to Dismiss is therefore **GRANTED** with respect to Claim I.

### 2. Claim III – USERRA Discrimination Based on Mrs. Norris's Own Prior Military Service

With regard to her discrimination claim based on her own past military service, Mrs. Norris is subject to the same burdens and pleading requirements detailed in the above discussion of Claim I. To survive a motion to dismiss, Mr. Norris must have alleged in her complaint that her own military service, which occurred from 1997 to 2005, was a motivating factor that caused Glassdoor to ask her to resign in 2011 or decline to rehire her in 2013. *See e.g.*, *Kieffer v. Fitness of Adrian, LLC*, 2017 WL 3581315, at *4-5 (E.D. Mich. Aug 18, 2017) (dismissing USERRA discrimination claim under Rule 12(b)(6) where plaintiff failed to allege that his uniformed service was a motivating factor in his firing).

Mrs. Norris's veteran status, on its own, does not entitle her to relief under USERRA. Though the Sixth Circuit has indicated that this statute is to be broadly construed to protect veterans and active service members, *Petty v. Metro. Gov't of Nashville-Davidson Cty.*, 538 F.3d 431, 439 (6th Cir. 2008) (citing *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2004)), USERRA does not make actionable *all* adverse employment actions against veterans, *see Kieffer*, 2017 WL 3581315 at *5. Instead, Section 4311 provides that a claimant's military status must be "the actual substantial or motivating factor for an adverse employment action." *Id.* If all veterans who experience adverse employment actions for *nondiscriminatory* reasons could recover legal

damages from their employers, USERRA might make veterans unemployable. Such far-reaching relief was not Congress's intent in passing USERRA, and no court has held that it was.

With respect to Claim III, Mrs. Norris only alleges that she is an honorably discharged Navy veteran and that two individuals who worked for the defendant (co-founder and CEO Robert Hohman and Manager of Content Melissa Fernandez) knew of her veteran status. (ECF No. 24 ¶¶ 27-28). Glassdoor's knowledge that an employee is a veteran does not, on its own, render every adverse employment action Glassdoor takes against such employees actionable. She does not sufficiently plead a factual basis for discriminatory motivation, which is necessary to succeed on a USERRA claim. As the Sixth Circuit observed, such motivation could be inferred from a variety of factors, including but not limited to:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 518 (6th Cir. 2009) (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)).

Though the Amended Complaint makes the bare statement that Glassdoor subjected Mrs. Norris to "disparate treatment on the basis of her prior service," (ECF No. 24 ¶ 29), she fails to provide any factual allegation to support this legal conclusion. The Court cannot ascertain any basis upon which to conclude that Mrs. Norris was the victim of discrimination based on her veteran status. Not only had her employer known of her veteran status when they hired her in the first place, but also six years had elapsed between Mrs. Norris's military activity and her resignation from Glassdoor. *See Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 629 (6th Cir. 2008) ("[T]here is a consensus that proximity alone generally will not suffice where the

adverse action occurs more than a few months… after the protected conduct."). She does not allege that Glassdoor expressed hostility toward veterans. Additionally, none of Mrs. Norris's factual allegations supports an inference that Glassdoor's stated reasons for requesting her resignation were mere pretext for invidious discrimination against veterans. By Mrs. Norris's own allegation, her husband's military service and her decision to follow him to Virginia are what motivated Glassdoor to demand her resignation. (*Id.* ¶ 11). Where a veteran "argues that something other than his [or her] military status was the actual substantial or motivating factor for an adverse employment action," a USERRA claim does not lie. *Kieffer*, 2017 WL 3581315, at *5.

Nor does Glassdoor's refusal to hire Mrs. Norris after she returned to the Buckeye State, without more, support an inference that Glassdoor's "offered reasons for Plaintiff's disparate treatment [were] merely a pretext to discriminate… on the basis of her prior service…." (ECF No. 24 ¶ 31). Glassdoor provided no express reason for its refusal to rehire Mrs. Norris, but Mr. Hohman and Ms. Fernandez knew of her veteran status when they hired her in 2007. (*Id.* ¶ 6). Mrs. Norris does not allege that Glassdoor concealed a dormant aversion toward veterans throughout her four years at the company or that Glassdoor developed discriminatory intent at a later time. *See Hoback v. City of Chattanooga*, No. 1:10-CV-74, 2011 WL 3420664, at *5 (E.D. Tenn. Aug. 4, 2011) (dismissing USERRA claim at summary judgment where plaintiff had worked for the defendant for four years, defendant was aware of his veteran status for the duration of his employment, and defendant offered adequate explanation for the firing). Glassdoor's Motion to Dismiss is therefore **GRANTED** with respect to **Claim III**.

### 3. Claims II and IV – Breach of Contract and Fraud

Mrs. Norris' remaining two claims sound in Ohio law. Federal courts may decline to exercise supplemental jurisdiction over state law claims when all claims over which the court

originally had jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). When determining whether to do so, courts weigh the values of "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In the Sixth Circuit, if "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims" without prejudice. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). When the dismissal of federal claims occurred due to a Rule 12(b)(6) motion, "there is a strong presumption in favor of dismissing supplemental claims." *Id.* at 1255. This presumption can be overcome only if relegating the claims to state court would subject the party facing dismissal to some prejudice. *Id.* (citing *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d. Cir 1975)).

This Court has dismissed both of Mrs. Norris's USERRA claims, the only claims over which it has federal question jurisdiction.[2] The present litigation is at an early stage: Glassdoor has not yet even filed its Answer. *See e.g.*, *Farmbrough-McCoy v. White Castle Sys. Inc.*, No. 1:17-CV-00019, 2017 WL 3085685, at *5 (S.D. Ohio July 20, 2017) (declining to exercise supplemental jurisdiction over state claims where all federal claims had been dismissed and defendant had not yet filed its Answer). Finally, there is no reason to believe that Mrs. Norris would face prejudice if required to pursue her remaining claims in state court. Because a state

---

[2] Federal Rule of Civil Procedure 8(a)(1) burdens a claimant with providing a "short plain statement of the grounds for the court's jurisdiction." In her Amended Complaint, Mrs. Norris only lists federal question jurisdiction under 28 U.S.C. § 1331 as the basis for this Court's subject matter jurisdiction. Though complete diversity exists between the parties, she has not included allegations sufficient to support an inference that the amount in controversy in Claims II and IV exceeds the $75,000 threshold for diversity jurisdiction as required in 28 U.S.C. § 1332. To establish diversity jurisdiction, a complaint must allege facts that could support a reasonable inference that the amount in controversy exceeds the statutory threshold. *See Sanborn Plastics Corp. v. St. Paul Fire and Marine Ins. Co.*, 753 F.Supp. 660, 662-63 (N.D. Ohio 1990). Here, the Amended Complaint leaves the amount in controversy to pure speculation. Therefore, 28 U.S.C. § 1332 does not provide a basis for the Court's jurisdiction over Mrs. Norris's breach of contract and fraud claims.

court is best situated to resolve her remaining claims, this Court declines to exercise supplemental jurisdiction over the state claims.

Mrs. Norris's breach of contract claim (**Claim II**) and fraud claim (**Claim IV**) are **DISMISSED WITHOUT PREJUDICE**.

### III. Conclusion

For the foregoing reasons, Glassdoor's Motion to Strike or Disregard is **GRANTED**, and the Court shall **DISREGARD** Mrs. Norris's affidavit and Form 214 when ruling on Glassdoor's Motion to Dismiss. Glassdoor's Motion to Dismiss is **GRANTED**. Accordingly, **Claims I and III** are **DISMISSED WITH PREJUDICE** for failure to state a claim. Because all claims over which this Court had federal question jurisdiction have been dismissed, this Court declines to exercise supplemental jurisdiction over Claims II and IV. **Claims II and IV** are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

                                                               s/ Algenon L. Marbley
                                                               **ALGENON L. MARBLEY**
                                                               **UNITED STATES DISTRICT JUDGE**

**DATED: July 13, 2018**